# Exhibit 2

Gary S. Graifman 007621994
**KANTROWITZ GOLDHAMER & GRAIFMAN, P.C.**
135 Chestnut Ridge Road, Suite 200
Montvale, New Jersey 07645
(201) 391-7000

*Co-counsel for Plaintiffs*

Robert S. Dowd, Jr. 026841984
**LAW OFFICES OF ROBERT S. DOWD, JR. LLC**
100 Challenger Road, Suite 100
Ridgefield Park, New Jersey  07660
(201) 489-3900
(201) 489-4700 Facsimile

*Co-counsel for Plaintiffs*

| | |
|---|---|
| CHARLES CURE, ROBERT BENIGNO and WILLIAM FREITAG, individually and on behalf of all others similarly situated, : : : | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: SOMERSET COUNTY DOCKET NO. SOM - L - 1215 -21 |
| Plaintiffs, : | |
| : | Civil Action |
| v. : | |
| : | **SUMMONS TO** |
| RARITAN VALLEY COUNTRY CLUB, a New Jersey non-profit corporation, JOHN/JANE DOES 1-20, individuals, said names being fictitious, ABC COMPANIES 1-20, business entities, said names being fictitious, : : : : : : | **RARITAN VALLEY COUNTRY CLUB** |
| Defendants. : | |

**From The State of New Jersey To The Following Defendant:** Raritan Valley Country Club, a New Jersey no-profit corporation, c/o its registered agent Patrick Boucher, 747 State Route 28, Bridgewater, NJ 08807

The plaintiffs, named above, have filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiffs, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiffs demand, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

September 15, 2021

/s/ Michelle M. Smith, Esq
Clerk of the Superior Court

Gary S. Graifman 007621994
**KANTROWITZ GOLDHAMER & GRAIFMAN, P.C.**
135 Chestnut Ridge Road, Suite 200
Montvale, New Jersey 07645
(201) 391-7000

*Co-counsel for Plaintiffs*

Robert S. Dowd, Jr. 026841984
**LAW OFFICES OF ROBERT S. DOWD, JR. LLC**
100 Challenger Road, Suite 100
Ridgefield Park, New Jersey  07660
(201) 489-3900
(201) 489-4700 Facsimile

*Co-counsel for Plaintiffs*

| | |
|---|---|
| CHARLES CURE, ROBERT BENIGNO and WILLIAM FREITAG, individually and on behalf of all others similarly situated, | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: SOMERSET COUNTY<br>DOCKET NO. SOM - L - ____ -21 |
|           Plaintiffs, | <u>Civil Action</u> |
|     v. | **CLASS ACTION COMPLAINT,<br>JURY DEMAND AND<br>DESIGNATION OF TRIAL COUNSEL** |
| RARITAN VALLEY COUNTRY CLUB, a New Jersey non-profit corporation, JOHN/JANE DOES 1-20, individuals, said names being fictitious, ABC COMPANIES 1-20, business entities, said names being fictitious, | |
|           Defendants. | |

Plaintiffs CHARLES CURE, ROBERT BENIGNO and WILLIAM FREITAG, individually and on behalf of all others similarly situated (collectively "PLAINTIFFS"), by way of Complaint against RARITAN VALLEY COUNTRY CLUB, a New Jersey non-profit corporation ("RVCC" or the "Club"), JOHN AND JANE DOES 1-20, individuals, said names being fictitious, and ABC COMPANIES 1-20, business entities, said names being fictitious, said names being fictitious (collectively, the "DEFENDANTS"), allege as follows:

## INTRODUCTION

1.      The named plaintiffs bring this action as a class action on behalf themselves and the other former members of RVCC.  RVCC operates a private golf club offering golf, recreational, dining and social facilities at 747 State Route 28 in Bridgewater, New Jersey.  The named plaintiffs and the Class purchased private golf proprietary memberships in RVCC (including the corresponding Proprietary Membership Certificates) based on the commitment by RVCC to repay them the cost of their Proprietary Membership Certificates once they resigned from RVCC from the proceeds collected from replacement proprietary members purchasing Proprietary Membership Certificates.

2.      RVCC has breached this commitment by enacting a series of changes to its membership programs which have eliminated the chance that RVCC's sale of private golf proprietary memberships would continue in a manner capable of funding repayment of the cost of the Proprietary Membership Certificates to the vast majority of former members who resigned on and after January 1, 2008.

3.      The effect of RVCC's actions and inactions since 2008 has been to shift the risk of nonpayment arising from the failure to sell the Proprietary Membership Certificates completely

onto the Club's former members, while adopting a system of membership changes that guarantees that such Proprietary Membership Certificates will not be purchased.

4.      At present there are approximately 200 former members who are owed an aggregate amount of approximately $2,700,000 for the amounts they paid for their respective Proprietary Membership Certificates.

## PARTIES

1.      At all relevant times, RVCC was and is a New Jersey non-profit corporation operating a private golf club offering golf, recreational, dining and social services and facilities at 747 State Route 28 in the Township of Bridgewater, County of Somerset, State of New Jersey.

2.      Plaintiff, CHARLES CURE, is an individual residing at 4876 Osprey Ridge Circle in the census designated place and unincorporated community of Palm Harbor, County of Pinellas, State of Florida.

3.      Plaintiff, ROBERT BENIGNO, is an individual residing at 5932 Nautical Isle Court, in the  city of Wilmington, County of New Hanover, State of North Carolina.

4.      Plaintiff, WILLIAM FREITAG, is an individual residing at 110 Ardsley Lane in the city of Alpharetta, County of Fulton, State of Georgia.

5.      JOHN/JANE DOES 1-20, said names being fictitious, are individuals who are or were trustees, members of the board of governors or executive committee, officers, employees or independent contractors of RVCC who have formulated, implemented and/or actively participated in the manner in which RVCC has administered the policies adopted or actions taken, or both, with respect to the Proprietary Membership Certificates purchased by PLAINTIFFS or otherwise personally and directly participated in the wrongful actions set forth in this Complaint.

6.      ABC COMPANIES 1-20, said names being fictitious, are business entities who are

3

or were independent contractors of RVCC who have formulated, implemented and/or actively participated in the manner in which RVCC has administered the policies adopted or actions taken, or both, with respect to the Proprietary Membership Certificates purchased by PLAINTIFFS or otherwise personally and directly participated in the wrongful actions set forth in this Complaint.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

7.      Before January 1, 2008, RVCC marketed, advertised and offered the sale of private golf "proprietary memberships" at RVCC to the general public (the "Marketing and Sales Period").

8.      In order to purchase these private golf proprietary memberships during the Marketing and Sales Period, individuals were required to pay to RVCC: (a) a substantial non-refundable initiation fee; (b) a separate amount of between $12,970 and $20,000 for a "Certificate of Membership" in RVCC (the "Proprietary Membership Certificate"); and (c) substantial membership dues and other fees on an ongoing basis.

9.      At all times relevant during the Marketing and Sales Period, RVCC represented that, in contrast to the non-refundable initiation fee, the monies a purchaser paid for their Proprietary Membership Certificate would be repaid to them by RVCC upon that individual's resignation or death, from the proceeds obtained by RVCC from the sale by RVCC of this private golf proprietary membership (including the corresponding the Proprietary Membership Certificate) to an incoming RVCC proprietary golf member.

10.     Each Proprietary Membership Certificate issued by RVCC to the purchasers of these private golf proprietary memberships certified that the purchaser named therein was the entitled to the rights and privileges of the Club House and to a full share in the  property and assets of the Club, subject to the RVCC By-Laws (the "RVCC By-Laws") that were in force at the time or as subsequently amended.

11.     Each Proprietary Membership Certificate issued by RVCC to the purchasers of these private golf proprietary memberships further certified that, upon termination of membership by resignation or death, their rights under the Proprietary Membership Certificate would cease and the Proprietary Membership Certificate would then be sold by RVCC to a new proprietary member, with repayment to the former owner of the Proprietary Membership Certificate to be made in accordance with the RVCC By-Laws in effect at that time.

12.     At all relevant times during the Marketing and Sales Period, RVCC was composed of members who had purchased private golf proprietary memberships which entitled them to full golf privileges at RVCC and held corresponding Proprietary Membership Certificates and members who had purchased non-proprietary social memberships from RVCC.

13.     At all relevant times during the Marketing and Sales Period, there was a waiting list for the purchase of private golf proprietary memberships from RVCC.

14.     At all relevant times during the Marketing and Sales Period, RVCC actions and representations led PLAINTIFFS to believe that RVCC's repayment of the amount paid for the Proprietary Membership Certificate would occur at some reasonable period of time after their respective resignations or deaths.

15.     At no time during the Marketing and Sales Period did RVCC or any of its marketing and sales materials indicate that in the event that its underlying obligation to repay the amount paid by a member for their Proprietary Membership Certificate was contingent or could be indefinitely evaded by RVCC.

16.     All of the PLAINTIFFS purchased private golf proprietary memberships from RVCC during the Marketing and Sales Period and paid monies to RVCC in exchange for the issuance by RVCC to PLAINTIFFS of a Proprietary Membership Certificate in RVCC.

5

17.     In or about the early 1990s, CHARLES CURE purchased a private golf "proprietary membership" in RVCC and paid RVCC the amount of Twenty-Thousand Dollars ($20,000.00) for a Proprietary Membership Certificate issued to him by RVCC evidencing his entitlement to full golf privileges at RVCC and ownership of a pro rata share of the property and assets of RVCC.

18.     On or before February 27, 1989, ROBERT BENIGNO purchased a private golf "proprietary membership" in RVCC and paid RVCC the amount of Twelve-Thousand Nine-Hundred and Seventy Dollars ($12,970.00) for a Proprietary Membership Certificate issued to him by RVCC evidencing his entitlement to full golf privileges at RVCC and ownership of a pro rata share of the property and assets of RVCC.

19.     By virtue of certain capital assessments by RVCC corresponding to his Proprietary Membership Certificate, ROBERT BENIGNO paid additional sums to RVCC of Six Thousand and Five Hundred Dollars ($6,500.00) on August 31, 2007 and Six-Hundred and Twenty-Five Dollars ($625.00) in or about December 2009, for a total amount paid toward his Proprietary Membership Certificate of Twenty-Thousand and Ninety Five Dollars ($20,095.00).

20.     In or about 1994, WILLIAM FREITAG purchased a private golf "proprietary membership" in RVCC and paid RVCC the amount of Twelve-Thousand Nine-Hundred and Seventy Dollars ($12,970.00) for a Proprietary Membership Certificate issued to him by RVCC evidencing his entitlement to full golf privileges at RVCC and ownership of a pro rata share of the property and assets of RVCC.

21.     By virtue of certain capital assessments by RVCC corresponding to his Proprietary Membership Certificate, WILLIAM FREITAG paid additional sums to RVCC totaling of Four Thousand and Two-Hundred and Twenty Dollars ($4,220.00) from August 31, 2007 through

December 31, 2010, for a total amount paid toward his Proprietary Membership Certificate of Seventeen-Thousand and One-Hundred and Ninety Dollars ($17,190.00). This total was later reduced due to some charges or dues that RVCC agreed to deduct from the amount due, rendering the current total of Sixteen-Thousand and One-Hundred and Three Dollars and Fifty Cents ($16,103.50) coresponding to William Freitag's Proprietary Membership Certificate.

22.     Beginning in approximately 2008, RVCC enacted a series of changes to its membership programs which had the effect of breaching its commitment to repay former members for their Proprietary Membership Certificates within a reasonable period of time after their resignation or death.

23.     Beginning in approximately 2008, RVCC made its repayment to former members for their Proprietary Membership Certificates wholly conditional upon its continuing sale of private golf proprietary memberships with full golf privileges at RVCC, and adopted a series of policies that eliminated the chance that RVCC's sale of private golf proprietary memberships with full golf privileges at RVCC would continue in a manner capable of funding repayment of the cost of the Proprietary Membership Certificates to the vast majority of former members who resigned or died on and after that date.

24.     For example, for a short period of time beginning in approximately 2008 RVCC began to sell private golf proprietary memberships with the corresponding Proprietary Membership Certificates for a nominal value of One-Thousand Dollars ($1,000.00).

25.     In addition, beginning in approximately 2009 RVCC began to sell and continues to this date to sell non-proprietary memberships with full golf privileges, thereby effectively eliminating the need for any incoming member to purchase a Proprietary Membership Certificate.

26.    Upon information and belief, over the last several years RVCC has not sold any private golf proprietary memberships or any corresponding Proprietary Membership Certificates, nor has it offered any for sale.

27.    The effect of RVCC's actions and inactions since 2008 as set forth above has been to essentially eliminate any possibility for PLAINTIFFS to obtain repayment from RVCC of the amounts they paid for their respective Proprietary Membership Certificates.

28.    The effect of RVCC's actions and inactions since 2008 has been to attempt to shift the risk of nonpayment arising from the failure to sell the Proprietary Membership Certificates completely to the former members, while adopting a system of membership changes that guarantees that such Proprietary Membership Certificates will not be purchased.

29.    Upon information and belief, as a result of RVCC's actions and inactions since 2008, there are approximately two-hundred (200) former members who are owed repayment by RVCC of the amounts they paid for their respective Proprietary Membership Certificates, in the total aggregate amount of approximately Two-Million Seven Hundred Thousand Dollars ($2,700,000.00).

30.    Upon information and belief, RVCC has the ability, through current financial resources, an assessment on current members and/or borrowing from third party(ies) for which it has substantial collateral, to fund the repayment to PLAINTIFFS for their Proprietary Membership Certificates.

31.    PLAINTIFFS resigned from RVCC on dates preceding the Complaint was filed in this action (the "Membership Resignation Period") and each of their resignations were accepted by RVCC.

8

32.     ROBERT BENIGNO resigned his proprietary membership in RVCC in or about December of 2012 and RVCC accepted his resignation effective on January 1, 2013.

33.     WILLIAM FREITAG resigned his proprietary membership in RVCC in or about December of 2012 and RVCC accepted his resignation effective on January 1, 2013.

34.     CHARLES CURE resigned his proprietary membership in RVCC and RVCC accepted his resignation effective on January 1, 2015.

35.     PLAINTIFFS paid all of their respective initiation fees, dues, charges and assessments due to RVCC and were members of RVCC in good standing prior to their respective dates of resignation.

36.     As of the date their respective memberships were terminated, PLAINTIFFS were bona fide creditors of RVCC in the respective amounts paid for their Proprietary Membership Certificates.

37.     Despite PLAINTIFFS' demand for repayment, RVCC has failed and refused to repay any amount to PLAINTIFFS in connection with their Proprietary Membership Certificates.

### FIRST COUNT
**Breach of Contract**
**Monies Paid for Proprietary Membership Certificates**

38.     PLAINTIFFS hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

39.     The Proprietary Membership Certificates constitute valid and enforceable contracts between PLAINTIFFS and RVCC.

40.     PLAINTIFFS performed all of their obligations to RVCC under their respective Proprietary Membership Certificates and in accordance with the provisions of the RVCC By-Laws.

9

41.     Each Proprietary Membership Certificate issued by RVCC to PLAINTIFFS certified that, upon termination of membership by resignation or death, the Proprietary Membership Certificate would then be sold by RVCC to a new proprietary member, with repayment to the former owner of the Proprietary Membership Certificate to be made in accordance with the RVCC By-Laws in effect at that time.

42.     Upon information and belief, at all times relevant to the allegations in this Complaint, the RVCC By-Laws provided that the timing of the repayment to members whose memberships were terminated by resignation or death or otherwise might be deferred by RVCC until funds were available from the issuance of Proprietary Membership Certificates to new members.

43.     The terms of the Proprietary Membership Certificate and the corresponding provisions of the RVCC By-Laws as set forth above did not place the risk of nonpayment arising from the failure of RVCC to sell proprietary golf memberships and the corresponding Proprietary Membership Certificates upon the PLAINTIFFS, but rather addressed the discretion of RVCC to defer the timing of the repayment by RVCC to PLAINTIFFS.

44.     The terms of the Proprietary Membership Certificate and the corresponding provisions of the RVCC By-Laws as set forth above were designed to permit RVCC to postpone payment for a reasonable period of time after a former member's membership was terminated due to resignation or death, during which RVCC would be afforded the opportunity of selling the proprietary golf memberships and the corresponding Proprietary Membership Certificates thereby procuring the funds necessary to repay the former member.

45.     A reasonable period of time has elapsed after the termination of the memberships of PLAINTIFFS and RVCC has failed and refused to repay PLAINTIFFS the amounts they paid for their respective Proprietary Membership Certificates.

46.     The effect of the actions and inactions of RVCC since 2008 has been to attempt to shift the risk of nonpayment arising from the failure to sell the Proprietary Membership Certificates completely to the former members, while adopting a system of membership changes that guarantees that such Proprietary Membership Certificates will not be purchased.

47.     The failure of RVCC to repay PLAINTIFFS the amounts they paid for their respective Proprietary Membership Certificates within a reasonable period of time after their respective memberships were terminated due to their resignation or death, constitutes a breach of the Proprietary Membership Certificates.

48.     Implicit in the terms of the Proprietary Membership Certificates and the corresponding provisions of the RVCC By-Laws as set forth above was that RVCC would continue to market and sell proprietary golf memberships and the corresponding Proprietary Membership Certificates in a manner that would enable RVCC to fulfill its commitment to repay former members whose memberships had terminated by resignation or death.

49.     Implicit in the marketing by RVCC of private golf proprietary memberships to potential members during the Marketing and Sales Period, and in its subsequent sale of these private golf memberships to PLAINTIFFS, was the commitment by RVCC to repay these purchasers for their Proprietary Membership Certificates within a reasonable time after that purchaser's death or resignation from RVCC.

50.     Implicit in the marketing by RVCC of private golf proprietary memberships to potential members during the Marketing and Sales Period, and in its subsequent sale of these

private golf memberships to PLAINTIFFS, was the commitment by continue to sell private golf proprietary memberships and corresponding Proprietary Membership Certificates in RVCC to potential members.

51.    Implicit in this marketing by RVCC of its sale of private golf proprietary memberships to potential members during the Marketing and Sales Period, and in its subsequent sale of these private golf memberships to PLAINTIFFS, was the commitment by RVCC not to offer for sale to potential new members alternative golf memberships at RVCC in lieu of proprietary memberships that would essentially eliminate any market for the purchase of proprietary memberships at RVCC.

52.    RVCC breached its obligations under the Proprietary Membership Certificates as set forth above by engaging in a series of actions, including those listed below, the result of which was to eliminate the chance that RVCC's sale of private golf proprietary memberships with the corresponding sale of Proprietary Membership Certificates would occur to fund repayment of the vast majority of former members who resigned or died on and after January 1, 2008:

(a)    Selling private golf proprietary memberships with the corresponding Proprietary Membership Certificates for a nominal value of One-Thousand Dollars ($1,000.00);

(b)    Selling non-proprietary memberships with full golf privileges, thereby eliminating the need for any incoming member to purchase a Proprietary Membership Certificate; and

(c)    Discontinuing the sale of private golf proprietary memberships or any corresponding Proprietary Membership Certificates.

53.     As a direct and proximate result of the breach as set forth above by RVCC of its contractual obligations to PLAINTIFFS under the Proprietary Membership Certificates, PLAINTIFFS have sustained damages.

**WHEREFORE,** PLAINTIFFS demand judgment in their favor and against RVCC for compensatory damages for the amounts due to them under Proprietary Membership Certificates, plus court costs, pre-judgment interest, post-judgment interest and such other relief as this Court may deem equitable and just.

**SECOND COUNT**
**Breach of Implied Covenant of Good Faith and Fair Dealing**
**Monies Paid for Proprietary Membership Certificates**

54.     PLAINTIFFS hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

55.     Under New Jersey law, every party to a contract is bound by an implied covenant of good faith and fair dealing in both the performance and enforcement of the contract.

56.     A party to a contract breaches the implied covenant of good faith and fair dealing if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation.

57.     A party breaches the implied duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract.

58.     The conduct of RVCC as set forth above is inconsistent with the bargained for rights of PLAINTIFFS under the Proprietary Membership Certificates.

59.     RVCC's conduct as set forth above is not true, honest or faithful to and is inconsistent with the reasonable expectations of the PLAINTIFFS when they purchased their

private golf proprietary memberships and corresponding Proprietary Membership Certificates
from RVCC.

60.   The conduct of RVCC as set forth above in failing and refusing to perform their
obligations under the Proprietary Membership Certificates has deprived PLAINTIFFS of the
benefit of their bargain under the Proprietary Membership Certificates.

61.   The conduct of RVCC as set forth above in failing and refusing to perform their
obligations under the Proprietary Membership Certificates was inequitable, committed in bad faith
and to frustrate the purpose of the Proprietary Membership Certificates and denies PLAINTIFFS
the repayment of the monies due to them under Proprietary Membership Certificates.

62.   The conduct of RVCC as set forth above was in bad faith or constitutes inequitable
conduct or both in that it has designed a system that indefinitely extends what is essentially an
interest free loan by PLAINTIFFS to RVCC to use in any manner it chooses.

63.   The conduct of RVCC as set forth above was in bad faith or constitutes inequitable
conduct or both in that it indefinitely postpones RVCC's repayment obligations to PLAINTIFFS
in order to fund capital and operating expenses while avoiding any assessments to current
proprietary members or increases to the annual dues of members.

64.   The conduct of RVCC as set forth above was in bad faith or constitutes inequitable
conduct or both in that it indefinitely postpones RVCC's repayment obligations to PLAINTIFFS
while applying for substantial loans from third parties for capital projects which will solely benefit
current members.

65.   The conduct of RVCC as set forth above was in bad faith or constitutes inequitable
conduct or both in that it was taken so the remaining proprietary members could maximize their
pro rata shares of the property and assets of RVCC due to them.

66.     RVCC doe not have unfettered discretion with respect to its repayment policies in connection with the Proprietary Membership Certificates, but is obligated to PLAINTIFFS to exercise its discretionary authority in a manner not only consistent with the terms of the Proprietary Membership Certificates but also in a manner that is not arbitrary, unreasonable or capricious considering all the relevant circumstances and PLAINTIFFS reasonably expected benefits under the Proprietary Membership Certificates.

67.     To the extent the conduct of RVCC as set forth above arose from their exercise of discretionary authority in connection with the Proprietary Membership Certificates, the exercise of this authority was arbitrary, unreasonable or capricious, with the objective of preventing PLAINTIFFS from receiving their reasonably expected benefits under the Proprietary Membership Certificates.

68.     The exercise by RVCC of its discretionary authority in connection with the Proprietary Membership Certificates is not reasonable under all the circumstances and violates public policy.

69.     Based on the above, the actions by RVCC were in violation of the covenant of good faith and fair dealing implied in every New Jersey contract, including the Proprietary Membership Certificates.

70.     At the time of their purchase of their respective Proprietary Membership Certificates from RVCC,   RVCC had overwhelmingly superior bargaining power over PLAINTIFFS with respect to the terms and conditions of the Proprietary Membership Certificates and the terms of future By-Laws that RVCC might enact to dictate how repayment to PLAINTIFFS

for their Proprietary Membership Certificates would be addressed.

71.     As a direct and proximate result of the breach as set forth above by RVCC of the covenant of good faith and fair dealing implied as a matter of law in the Proprietary Membership Certificates, PLAINTIFFS have sustained damages in the amounts they paid for their respective Proprietary Membership Certificates.

**WHEREFORE,** PLAINTIFFS demand judgment in their favor and against RVCC for compensatory damages, plus court costs, pre-judgment interest, post-judgment interest and such other relief as this Court may deem equitable and just.

**THIRD COUNT**
**Violation of the New Jersey Consumer Fraud Act**
**Monies Paid for Proprietary Membership Certificates,**
**Treble Damages and Attorneys' Fees**

72.     PLAINTIFFS hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

73.     The New Jersey Consumer Fraud Act (the "CFA") states in pertinent part as follows:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J.S.A. 56:8-2.

74.     Each of the DEFENDANTS is a "person" subject to the CFA pursuant to N.J.S.A. 56:8-1(d).

75.     The private golf memberships sold by RVCC to PLAINTIFFS, as set forth above, constitute "merchandise" under the CFA pursuant to N.J.S.A. 56:8-1(c).

76.     During the Marketing and Sales Period, RVCC employed "advertisements" as that term is defined pursuant to N.J.S.A. 56:8-1 (c), in the marketing by RVCC of its sale of private golf proprietary memberships and corresponding Proprietary Membership Certificates to potential members, and in its subsequent sale of these private golf memberships to PLAINTIFFS.

77.     During the Marketing and Sales Period, an integral part of the marketing by RVCC of its sale of private golf proprietary memberships and corresponding Proprietary Membership Certificates to potential members, and in its subsequent sale of these private golf memberships to PLAINTIFFS, was the inducement by RVCC to PLAINTIFFS that it would repay to purchasers of private golf proprietary memberships the amounts they paid to acquire the Proprietary Membership Certificates after that purchaser's death or resignation from RVCC.

78.     The adverstisements employed by RVCC in its marketing of its sale of private golf proprietary memberships and corresponding Proprietary Membership Certificates to potential members, and the documents employed in RVCC's subsequent sale of these private golf memberships to PLAINTIFFS, employed numerous vague, misleading, deceptive or ambiguous language with the capacity to mislead the PLAINTIFFS.

79.     The adverstisements employed by RVCC in its marketing of its sale of private golf proprietary memberships and corresponding Proprietary Membership Certificates to potential members, and in the documents employed in RVCC's subsequent sale of these private golf memberships to PLAINTIFFS, had the capacity to mislead the PLAINTIFFS with respect to the ability of RVCC to take action after the termination of the respective memberships of PLAINTIFFS due to their death or resignation that would have the effect of indefinitely postponing

17

repayment of the amounts they paid to acquire the Proprietary Membership Certificates and/or not effect this repayment within a reasonable period of time after their death or resignation.

80.     The actions and inactions of RVCC as set forth in the paragraphs prior to this Count III of the Complaint, the result of which was the failure and refusal by RVCC to repay PLAINTIFSS the amounts they paid to acquire the Proprietary Membership Certificates, constitute unconscionable commercial practices, deceptions, fraud, false pretenses, misrepresentations, and the knowing, concealment, suppression, or omission of material facts with intent that PLAINTIFFS rely upon such concealment, suppression or omission, in connection with the subsequent performance of the obligations pursuant to Proprietary Membership Certificates of RVCC to PLAINTIFFS as former proprietary members of RVCC.

81.     As a direct and proximate result of the violations of the CFA by RVCC, as set forth above, PLAINTIFFS have sustained an ascertainable loss and damages.

82.     ABC COMPANIES 1-20, business entities, said names being fictitious, and JOHN/JANE DOES 1-20, individuals, said names being fictitious, are jointly and severally liable with RVCC under the CFA for their conduct in encouraging, facilitating, causing and actively participating in the conduct of RVCC as set forth above.

**WHEREFORE**, PLAINTIFFS demand judgment in their favor and against RVCC, ABC COMPANIES 1-20 and JOHN/JANE DOES 1-20, jointly and severally, for compensatory damages, treble damages pursuant to N.J.S.A. 56:8-19, reasonable attorneys' fees and costs of suit pursuant to N.J.S.A. 56:8-19, pre-judgment interest, post-judgment interest and such other relief as this Court may deem equitable and just.

**FOURTH COUNT**
**Violation of the New Jersey Consumer Fraud Act:**
**Refund Pursuant to N.J.S.A. 56:8-2.11 of Monies Paid For Proprietary**
**Membership Certificates, Treble Damages and Attorneys' Fees**

83.     PLAINTIFFS hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

84.     N.J.S.A. 56:8-2.11 provides: "Any person violating the provisions of the within Act shall be liable for a refund of all money acquired by means of any practice declared herein to be unlawful."

85.     As a direct and proximate result of the violations of the CFA by RVCC as set forth above, RVCC acquired the monies paid by PLAINTIFFS to RVCC when they purchased private proprietary golf memberships and corresponding Proprietary Membership Certificates from RVCC.

86.     Pursuant to N.J.S.A. 56:8-2.11, RVCC is liable to refund to PLAINTIFFS the entire amount of the monies paid by each of the PLAINTIFFS to RVCC when they purchased private proprietary golf memberships and corresponding Proprietary Membership Certificates from RVCC.

**WHEREFORE**, PLAINTIFFS demand judgment in their favor and against RVCC pursuant to N.J.S.A. 56:8-2.11 for a refund of the entire amount paid by PLAINTIFFS to RVCC when they purchased private proprietary golf memberships and corresponding Proprietary Membership Certificates from RVCC, reasonable attorneys' fees and costs of suit pursuant to N.J.S.A. 56:8-19, pre-judgment interest, post-judgment interest and such other relief as this Court may deem equitable and just.

19

**FIFTH COUNT**
**Unjust Enrichment**
**Monies Paid for Proprietary Membership Certificates**

87.    PLAINTIFFS hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

88.    RVCC benefitted and continues to benefit from the reasonable value of the proceeds it received from PLAINTIFFS for their Proprietary Membership Certificates.

89.    Based on all the facts and circumstances set forth above, including the relationship of the parties, it would be unjust and inequitable to permit RVCC to retain the benefit of the payments it received from PLAINTIFFS for their Proprietary Membership Certificates.

90.    Based on the allegations set forth above, RVCC has been unjustly enriched and all monies it received from PLAINTIFFS for their Proprietary Membership Certificates.

91.    Based on the foregoing, PLAINTIFFS have sustained damages in the amount of the payments they made to RVCC for their Proprietary Membership Certificates.

**WHEREFORE,**  PLAINTIFFS demand judgment in their favor and against RVCC for compensatory damages, plus court costs, pre-judgment interest, post-judgment interest and such other relief as this Court may deem equitable and just.

**CLASS ACTION ALLEGATIONS**

92.    The named plaintiffs bring this action on behalf of themselves and all other persons similarly situated, pursuant to R. 4:32-1, *et seq.*

93.    The Class which the named plaintiffs seek to represent is defined as:

> All former members of RVCC whose memberships in RVCC were terminated on or after January 1, 2008 due to resignation or death and who have not received repayment from RVCC of the amounts they paid to RVCC for their Proprietary Membership Certificates.

## NUMEROSITY

94.     The members of the Class are so numerous that joinder of all members is impractical. The precise number of Class members can only be ascertained through discovery, which includes the membership records of RVCC. The disposition of their claims through a class action will benefit both the parties and this Court. Upon information and belief, there are approximately (200) former members of RVCC whose memberships in RVCC were terminated on or after January 1, 2008 due to resignation or death and who have not received repayment from RVCC of the amounts they paid to RVCC for their Proprietary Membership Certificates.

## COMMON QUESTIONS OF LAW AND FACT

95.     There is a well-defined community of common interest in the questions of law and fact involved affecting the members of the Class.

96.     Pursuant to R. 4:32-1(b)(3), the questions of law and fact common to the Class predominate over questions which may affect individual members, and include the following:

   a)      Whether a valid contract existed between RVCC and PLAINTIFFS;

   b)      Whether the conduct of RVCC constitutes a breach of contract;

   c)      Whether the conduct RVCC violates the implied covenant of good faith and fair dealing implied in its contract with the PLAINTIFS;

   d)      Whether the DEFENDANTS' conduct, actions, misrepresentations and intentional omissions constitute violations of the New Jersey Consumer Fraud Act;

   e)      Whether the violation by RVCC of the New Jersey Consumer Fraud Act entitles PLAINTIFFS to a refund of the amounts they paid for the Proprietary Membership Certificates under N.J.S.A. 56:8-2.11; and

f)      Whether the retention and use by RVCC of the proceeds it received from PLAINTIFFS for their Proprietary Membership Certificates constitutes unjust enrichment.

97.     Because members of the Class are numerous and similarly situated, and questions of law and fact common to the Class predominate, a class action is superior to any other available methods for the fair and efficient adjudication of the controversy.

## TYPICALITY

98.     The claims and defenses of the named plaintiffs, as the representative PLAINTIFFS, are typical of the claims and defenses of the class because the named plaintiffs and the Class members all purchased a private golf proprietary membership from RVCC and paid for Proprietary Membership Certificates in and to RVCC, which Proprietary Membership Certificates all contain identical terms and conditions and are all subject to the same set of RVCC By-Laws and all were later improperly denied the payment due to each of them under the terms of the Proprietary Membership Certificates and the RVCC By-Laws following the termination of their respective memberships in RVCC as a result of the conduct, actions and omissions of DEFENDANTS.

## ADEQUACY OF REPRESENTATION

99.     The named plaintiffs, as the representative plaintiffs, will fairly and adequately assert and protect the interests of the Class as:

a) The named plaintiffs have hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class; and

b) The named plaintiffs have no conflict of interest that will interfere with the maintenance of this class action.

## PREDOMINANCE

100.   Questions common to the Class predominate over those which only affect individual former members.  This case involves Proprietary Membership Certificates purchased by all Class members from RVCC which all contain identical terms and conditions and are all subject to the RVCC By-Laws and the identical conduct of DEFENDANTS with respect to its former members who purchased a private golf proprietary membership from RVCC and whose memberships were terminated after January 1, 2008 due to their death or resignation.  Liability will primarily be predicated upon the jury's evaluation of the Proprietary Membership Certificates and DEFENDANTS' actions, omissions and conduct in connection with these Proprietary Membership Certificates and treatment of PLAINTIFFS rights thereunder.

## SUPERIORITY

101.   A class action provides a fair and efficient method for the adjudication of controversy for the following reasons:

(a)   The common questions of law and fact set forth in Paragraph 96 predominate over any questions affecting only individual Class members;

(b)   The Class is so numerous as to make joinder impracticable.  The Class, however, is not so numerous as to create manageability problems.  There are no unusual legal or factual issues which would create manageability problems;

(c)   Prosecution of a separate action by individual members of the Class would create a risk of inconsistent and varying adjudications against DEFENDANTS and would establish incompatible standards of conduct for DEFENDANTS;

(d)     The claims of the individual Class members are small in relation to the expenses of litigation, making a class action the only procedure in which Class members can, as a practical matter, recover.

(e)     A class action would be superior to and more efficient than adjudicating hundreds of individual lawsuits.

(f)     DEFENDANTS have acted and refused to act in a manner generally applicable to all members of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with the respect the class as a whole.

## PRAYER FOR ORDER CERTIFYING CLASS

**WHEREFORE,** the named plaintiffs, individually and on behalf of all others similarly situated, pray for a judgment against DEFENDANTS for an order certifying the Class pursuant to R. 4-32-1(b), appointing the named plaintiffs as representatives of the Class, and appointing the law firms representing PLAINTIFFS as counsel for the Class.

**KANTROWITZ GOLDHAMER &**
**GRAIFMAN, PC**
Co-counsel for Plaintiffs

By: */s/ Gary Graifman*
         Gary S. Graifman

September 15, 2021

**LAW OFFICES OF**
**ROBERT S. DOWD, JR LLC**
Co-counsel for Plaintiffs

By: */s/ Robert S. Dowd, Jr.*
         Robert S. Dowd, Jr.

September 15, 2021

24

## JURY DEMAND

PLAINTIFFS hereby demand a trial by jury on all issues.

**KANTROWITZ GOLDHAMER &
GRAIFMAN, PC**
Co-counsel for Plaintiffs

By: /s/ Gary Graifman
      Gary S. Graifman

September 15, 2021

**LAW OFFICES OF
ROBERT S. DOWD, JR LLC**
Co-counsel for Plaintiffs

By: /s/ Robert S. Dowd, Jr.
      Robert S. Dowd, Jr.

September 15, 2021

## DESIGNATION OF TRIAL ATTORNEY PURSUANT TO R. 4:5-1

Gary S. Graifman and Robert S. Dowd, Jr. are hereby designated as trial counsel.

**KANTROWITZ GOLDHAMER &
GRAIFMAN, PC**
Co-counsel for Plaintiffs

By: /s/ Gary Graifman
      Gary S. Graifman

September 15, 2021

**LAW OFFICES OF
ROBERT S. DOWD, JR. LLC**
Co-counsel for Plaintiffs

By: /s/ Robert S. Dowd, Jr.
      Robert S. Dowd, Jr.

September 15, 2021

# Civil Case Information Statement

## Case Details: SOMERSET | Civil Part Docket# L-001215-21

**Case Caption:** CURE CHARLES  VS RARITAN VALLEY COUNT RY CLUB

**Case Initiation Date:** 09/15/2021

**Attorney Name:** ROBERT S DOWD JR

**Firm Name:** ROBERT S. DOWD, JR. LLC

**Address:** 100 CHALLENGER RD STE 100 RIDGEFIELD PARK NJ 07660

**Phone:** 2014893900

**Name of Party:** PLAINTIFF : Cure, Charles

**Name of Defendant's Primary Insurance Company (if known):** None

**Case Type:** COMPLEX COMMERCIAL

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Charles Cure?** NO

**Are sexual abuse claims alleged by: Robert Benigno?** NO

**Are sexual abuse claims alleged by: William Freitag?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
> **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
> **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** YES  **Title 59?** NO  **Consumer Fraud?** YES

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

<u>09/15/2021</u>
Dated

<u>/s/ ROBERT S DOWD JR</u>
Signed